Mikeisha BLACKMAN, et al., Plaintiffs,

v.

## DISTRICT OF COLUMBIA, et al., Defendants.

James Jones, et al., Plaintiffs,

v.

District of Columbia, et al., Defendants.

No. CIV.A. 97–1629(PLF), CIV.A. 97–2402(PLF).

United States District Court, District of Columbia.

Aug. 5, 2004.

Elise T. Baach, Washington, DC, pro se.

Andrew L. Lipps, Ky Elaine Kirby, Swidler, Berlin, Shereff & Friedman, L.L.P., Myrna L. Fawcett, Bonita Alexis Jones–Moon, Arthur Hughes Fawcett, Jr., Fawcett & Fawcett, Alisa H. Reff, Drinker, Biddle & Reath, Travis A. Murrell, Murrell & Associates, James E. Brown, James E. Brown & Associates, PLLC, James E. Williams, Jester & Williams, Urenthea McQuinn, Maria Ludmila Merkowitz, Office of Corporation Counsel, Ronald Lee Drake, Tamara Lynn Seltzer, Margaret A. Kohn, Donna Lee Wulkan, Anna Elizabeth Jenefsky, Karen D. Alvarez, Lawrence Hart Huebner, Laura Nicole Rinaldi, Mat-

thew I. Fraidin, Jesse P. Goode, Washington, DC, Carolyn W. Houck, Chevy Chase, MD, Paul Leonard Chassy, Chassy & Chassy, Kensington, MD, Daniel Adlai Katz, Andalman & Flynn, Silver Spring, MD, Ellen Douglass Dalton, Paul S. Dalton, William E. Houston, Dalton & Dalton, P.C., Alexandria, VA, Diana Marjorie Savit, Savit & Szymkowicz, LLP, Bethesda, MD, Haylie Michelle Iseman, Michael J. Eig, Michael J. Eig and Associates, P.C., Chevy Chase, MD, Matthew Barry Bogin, Futrovsky, Nitkin & Scherr, Chartered, Rockville, MD, for Plaintiffs.

Cary D. Pollak, Daniel Albert Rezneck, Jeffery Thomas Infelise, Robert C. Utiger, Eden I. Miller, Robert Ray Rigsby, Veronica A. Porter, Office of Corporation Counsel, Daniel Herbert Margolis, Patton Boggs LLP, Lisa Annette Bell, Office of the General Counsel, Cathye Hopkins, Veleter Mazych, DCPS General Counsel, Maria L. Merkowitz, Assistant Corporation Counsel, Washington, DC, Laurie Pouzzner McManus, Arlington, VA, for Defendants.

Evangeline Covington, Adult Legal, LLC, Washington, DC, for Interested Party.

James E. Williams, III, Elizabeth Tacy Jester, Jester & Williams, Washington, DC, for Plaintiffs and Claimants.

Charles A. Moran, Fawcett & Fawcett, Washington, DC, for Plaintiffs and Movants.

Maya Alexandri, Wilmer Cutler Pickering Hale & Dorr LLP, Karen D. Alvarez, Washington, DC, for Movants.

Lisa Kay Coleman, Office of Adjudications & Hearings, Washington, DC, for Intervenor.

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This action was filed under 42 U.S.C. § 1983 to enforce the rights of the plaintiff class members under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. Before the Court are three motions for attorneys' fees and costs: (1) the motion of Diana Blackwell, filed on behalf of herself and her daughter Equilla Blackwell; (2) the motion of Victoria Harris, filed on behalf of herself and her daughter Chandra Harris; and (3) the motion of Dionne Timmons, on behalf of herself and her son Donnell Timmons. Defendants filed an opposition to each motion, plaintiffs filed reply briefs and supplemental requests for attorneys' fees and costs. In the interim, the parties also briefed the issue of whether the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), affects the Court's analysis of plaintiffs' motions.[1] Upon consideration of the arguments of the parties, the Court concludes that plaintiffs are entitled to attorneys' fees, and their motions therefore are granted.

## I. BACKGROUND

### A. *Procedural History of this Action*

On May 14, 1998, the Court certified a class with two subclasses in the consolidated cases of *Blackman v. District of Columbia*, Civil Action No. 97–1629(PLF), and *Curtis v. District of Columbia*, Civil Action No. 97–2402(PLF).[2] The first sub-

---

**1.** The Court will consider these motions together because the briefs submitted by the parties are substantively identical. In referencing the parties' positions, the Court will

cite to the briefs filed with respect to plaintiff Dionne Timmons unless otherwise noted.

**2.** This case later was re-captioned as *Jones v. District of Columbia* because Shaquette Cur-

class, the *Blackman* subclass, is defined as "all persons now, and in the future, who present complaints to DCPS pursuant to Section 615(b)(6) of the IDEA and whose requests for impartial due process hearings under Section 615(f) of the IDEA and D.C. Mun. Regs. Tit. 5, § 3021.5 are overdue according to those provisions; and their next friends." *Blackman v. District of Columbia,* Civil Action No. 97–1629, Order (D.D.C. May 14, 1998). The second subclass, the *Jones* subclass, is defined as "all children, now and in the future, who are entitled to have DCPS provide them with a free appropriate public education [FAPE] and who have been denied same because DCPS either (a) has failed to fully and timely implement the determination of hearing officers, or (b) failed to fully and timely implement agreements concerning a child's identification, evaluation, educational placement, or provision of FAPE that DCPS has negotiated with the child's parent or educational advocate." *Id.*

On June 3, 1998, the Court granted plaintiffs' motion for summary judgment as to liability. *See* Order and Opinion of June 3, 1998. The Court declined to issue a class-wide preliminary injunction at that time, concluding that such a broad injunction "would be ineffective and impractical." *Blackman v. District of Columbia,* 185 F.R.D. 4, 5 (D.D.C.1999). Instead, the Court assumed that in the most severe cases, in which irreparable injury was threatened absent some action by the District, "the District would not ignore its obligation to take such action even absent resolution of the claims of the class as a whole." *Id.* By 1999, however, the Court concluded that the District had ignored its obligations, even in severe cases, and appointed Elise Baach, Esq., as a Special

Master "for the limited purposes of assisting the Court in resolving the requests for immediate injunctive relief," which was "the least intrusive and most effective way to ensure that the noncompliance with the IDEA which gave rise to liability does not cause irreparable injury to any individual class member pending the determination of class-wide relief." *Id.* at 7, 8.

The Order of Reference entrusted the Special Master "with the dual function of facilitating a mutually satisfactory resolution of each such individual claim, and, in the absence of a mutually acceptable resolution, providing the Court with a report and recommendation with respect to whether any particular plaintiff is entitled to preliminary injunctive relief." *Blackman v. District of Columbia,* 185 F.R.D. at 9. The Order broadly applied to "any motion filed in this Court by a member or members of the class certified in this case which seeks a temporary restraining order, a preliminary injunction or other emergency injunctive relief in addition to or more quickly than any relief that will be afforded to the class as a whole either after trial ... or upon settlement, for injury stemming from the liability that the Court has found in this case." *Id.* The Order of Reference included a detailed mechanism by which the Special Master would assist the Court in providing a plaintiff relief while concurrently protecting the interests of the District. *See id.* at 9–10.

B. *Plaintiffs' Motions for Attorneys' Fees and Costs*

These three plaintiffs come before the Court in very similar postures. On December 15, 1999, plaintiff Diane Blackwell, on behalf of her minor child Equilla Blackwell, filed a motion for preliminary injunc-

---

tis, the first named plaintiff in the *Curtis* complaint, was a member of the *Blackman* class, not a member of the second subclass. *See Blackman v. District of Columbia,* Civil Action

No. 97–1629, Order and Opinion at 3 n. 1 (D.D.C. June 3, 1998) ("Order and Opinion of June 3, 1998").

tion with the Court in accordance with the Order of Reference. Ms. Blackwell sought an order enforcing a November 1, 1999 settlement agreement obtained in lieu of a due process proceeding initiated under the IDEA. Defendants subsequently complied with the November 1, 1999 settlement agreement, and on August 31, 2000, the Special Master therefore filed a Report and Recommendation with the Court recommending that plaintiff's motion for injunctive relief be denied. The Court denied Ms. Blackwell's motion for preliminary injunction on September 20, 2000. Ms. Blackwell then filed the current motion on October 3, 2000, seeking $11,286.00 in attorneys' fees and $317.35 in costs. *See* Points and Authorities in Support of Plaintiff's Motion for an Award of Attorney's Fees and Costs filed on behalf of Diane Blackwell at 1–2. On November 15, 2001, plaintiff filed a supplement to her motion, moving for an additional $1,250.00 in fees and $40.88 in costs for counsel's efforts in litigating the instant motion. *See* Supplement to Plaintiffs' Motion for an Award of Attorneys' Fees and Costs at 2.

On August 8, 2000, plaintiff Dionne Timmons, on behalf of her minor child Donnell Timmons, filed a motion for preliminary injunction with the Court seeking compliance with a January 11, 2000 settlement agreement. After Ms. Timmons filed her motion for preliminary injunction, defendants complied with the requirements of the settlement agreement. On January 22, 2001, the Special Master therefore filed a Report and Recommendation with the Court recommending that plaintiff's motion for injunctive relief be denied, and the Court denied plaintiff's motion for a preliminary injunction on February 12, 2001. Ms. Timmons then filed her current motion on March 7, 2001, seeking $3,094.00 in attorneys' fees and $154.03 in costs. *See* Points and Authorities in Support of Plaintiff's Motion for an Award of Attorney's

Fees and Costs filed on behalf of Dionne Timmons at 1–2. On November 19, 2001, plaintiff filed a supplement to her motion, moving for an additional $1,260.00 in fees and $20.31 in costs for counsel's efforts in litigating the instant motion. *See* Supplement to Plaintiffs' Motion for an Award of Attorneys' Fees and Costs at 2.

On August 16, 2000, plaintiff Victoria Harris, on behalf of her minor child Chanda Harris, filed a motion for preliminary injunction with the Court in accordance with the procedures specified in the Order of Reference. Ms. Harris sought compliance with a February 4, 2000 settlement agreement entered into between the parties pursuant to plaintiffs' rights under the IDEA. After Ms. Harris filed the motion for preliminary injunction, defendants complied with the requirements of the February 4 settlement agreement. On January 22, 2001, the Special Master therefore filed a Report and Recommendation with the Court recommending that plaintiff's motion for injunctive relief be denied. In her report, the Special Master noted that "[t]hrough plaintiff counsel's efforts, the relief sought has been obtained." Report and Recommendations of the Special Master in the Matter of Victoria Harris at 4. Accordingly, the Court denied plaintiff's motion for a preliminary injunction on February 12, 2001. Ms. Harris then filed the current motion on February 14, 2001, seeking $8,017.00 in attorneys' fees and $204.70 in costs relating to counsel's efforts. *See* Points and Authorities in Support of Plaintiff's Motion for an Award of Attorney's Fees and Costs filed on behalf of Victoria Harris at 1–2. On May 22, 2001, Ms. Harris filed a supplement to her motion, moving for an additional $1,120.00 in fees and $93.20 in costs for counsel's efforts in litigating the instant motion. *See* Supplement to Plaintiffs' Motion for Attorneys' Fees and Costs at 2. On November 15, 2001, plaintiff filed a second

supplement requesting an additional $1,511.00 in fees and $18.63 in costs for her continued effort on her original fee motion. *See* Second Supplement to Plaintiffs' Motion for an Award of Attorneys' Fees and Costs at 2.

## II. DISCUSSION

### A. *Applicability of Buckhannon to Section 1988 Claims*

In an action brought pursuant to 42 U.S.C. § 1983, the Court in its discretion "may allow the prevailing party ... a reasonable attorney's fee as part of the costs" under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Prior to 2001, this Circuit applied the "catalyst" theory to determine whether a plaintiff was a "prevailing party" for the purposes of 42 U.S.C. § 1988, whereby a plaintiff was eligible for an award if the court determined that " 'there were colorable civil rights claims involved in the case *and* [that] they served as catalysts in securing the result.' " *See Blackman v. District of Columbia*, 59 F.Supp.2d 37, 41 (D.D.C.1999) (quoting *Grano v. Barry*, 783 F.2d 1104, 1110 (D.C.Cir.1986)). In 2001, however, the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), changed the landscape for awarding attorneys' fees under fee-shifting statutes such as 42 U.S.C. § 1988 by rejecting the "catalyst" theory and adopting a more stringent definition of "prevailing party."

In *Buckhannon*, the plaintiffs operated assisted living care homes that failed an inspection by the state fire marshal because some of the residents were incapable of "self-preservation" as defined under state law. In response, the plaintiffs filed suit charging that the "self-preservation" requirement violated the Fair Housing Amendments Act of 1988, 42 U.S.C.

§§ 3601 *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq. See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. at 600–01, 121 S.Ct. 1835. While the suit was pending, the state legislature enacted two bills eliminating the provisions in question, and the district court granted defendants' subsequent motion to dismiss on the ground of mootness *See id.* at 601, 121 S.Ct. 1835. The plaintiffs then sought attorneys' fees and costs as prevailing parties under the FHAA, 42 U.S.C. § 3613(c)(2), and the ADA, 42 U.S.C. § 12205, arguing that under the "catalyst theory," they had "achiev[ed] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835.

The Supreme Court rejected the plaintiffs' claim, concluding that the "catalyst theory" was an impermissible basis for the award of attorneys' fees under the statute. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. at 610, 121 S.Ct. 1835. Rather, the Court concluded, there must be an "alteration in the legal relationship of the parties" that has been given some judicial *imprimatur* in order to qualify as a "prevailing party" under fee-shifting statutes. *Id.* at 605, 121 S.Ct. 1835. This definition includes, *inter alia*, enforceable judgments on the merits and court-ordered consent decrees because both "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Assn. v. Garland Independent School District*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Supreme Court noted that attorneys' fees normally would not be available to parties that reach private settlements because such agreements "do not entail the judicial approval and oversight involved in consent

decrees." *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. at 604 n. 7, 121 S.Ct. 1835.

■ Although *Buckhannon* concerned fee awards under the FHAA and the ADA, the Supreme Court indicated that its reasoning applied to analogous fee-shifting statutes such as Section 1988. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. at 603 n. 4, 121 S.Ct. 1835 ("[W]e have interpreted the[ ] fee shifting provisions" of the FHAA, the ADA and the Civil Rights Attorney's Fees Awards Act "consistently."). Although the D.C. Circuit has not addressed *Buckhannon* in the context of Section 1988, it has applied *Buckhannon* to other fee-shifting statutes. *See Thomas v. National Science Foundation,* 330 F.3d 486, 488–89 (D.C.Cir.2003) (*Buckhannon* standard applicable to claim for fees under Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)); *Oil, Chemical & Atomic Workers Int'l Union v. Dep't of Energy,* 288 F.3d 452, 455 (D.C.Cir.2002) (*Buckhannon* standard applicable to claim for fees under FOIA, 5 U.S.C. § 552(a)(4)(E)). Every other circuit has addressed this issue, and each has concluded that the *Buckhannon* analysis applies to claims for fees under Section 1988. *See Alliance to End Repression v. City of Chicago,* 356 F.3d 767, 769 (7th Cir.2004); *Smalbein v. City*

of *Daytona Beach,* 353 F.3d 901, 904–05 (11th Cir.2003); *Toms v. Taft,* 338 F.3d 519, 528 (6th Cir.2003); *Walker v. City of Mesquite,* 313 F.3d 246, 249 (5th Cir.2002); *Cody v. Hillard,* 304 F.3d 767, 772 (8th Cir.2002); *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir.2002); *Truesdell v. Philadelphia Housing Authority,* 290 F.3d 159, 165 (3d Cir.2002); *New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9, 30 (1st Cir.2002); *Smyth v. Rivero,* 282 F.3d 268, 274 (4th Cir.2002); *New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi and Limousine Commission,* 272 F.3d 154, 158 (2d Cir.2001). Following this unanimous authority, the Court concludes that the definition of "prevailing party" articulated by the Supreme Court in *Buckhannon* applies to motions for attorneys' fees brought pursuant to Section 1988. The Court therefore must determine whether plaintiffs here are prevailing parties under *Buckhannon.*

### B. Prevailing Party Status Under Buckhannon

Defendants argue that plaintiffs are not "prevailing parties" under *Buckhannon* because the parties reached private settlements of the issues raised in plaintiffs' motions for injunctive relief. *See* Defendant's Supplemental Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorney's Fees and Costs at 4–7.[3] Plaintiffs respond with an

---

**3.** Prior to *Buckhannon,* defendants opposed the award of fees on the ground that fees sought pursuant to Section 1988 were limited by a statutory cap that first appeared in Section 130 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105–277, 122 Stat. 2681, 2681–138 (1998). The Court already has rejected this argument, however, concluding that the statutory cap does not apply to fees sought under Section 1988 for counsel's efforts in Section 1983 cases. *See Blackman v. District of Columbia,* 145 F.Supp.2d 47, 53 (D.D.C.2001); *Petties v. District of Columbia,*

55 F.Supp.2d 17, 17 (D.D.C. May 14, 1999), 1999 U.S. Dist. LEXIS 10768, at *2. Nor does that portion of Section 140 of the District of Columbia Appropriations Act of 2002 that prospectively prohibits payment of certain prior attorneys' fees petitions under the IDEA because this action was not brought under the IDEA. *See* Section 140(a) of the District of Columbia Appropriations Act of 2002, Pub.L. No. 107–96, 115 Stat. 923 (2001); *cf. Armstrong v. Vance,* Civil Action No. 01–2677, 2004 WL 1763984, Opinion at

argument unique to these consolidated class actions: plaintiffs fall within the parameters of *Buckhannon* because each plaintiff, an undisputed member of the *Jones* subclass, is a prevailing party under the Court's Order and Opinion of June 3, 1998, in which the Court granted plaintiffs' motion for summary judgment on liability for the *Jones* subclass. *See* Plaintiff's Reply to Defendants' Supplemental Opposition to Plaintiff's Motion for Attorney's Fees and Costs ("Pls.' Supp. Rep.") at 4. Plaintiffs argue that this decision altered the legal relationship of the parties because as a result of the Court's decision, the plaintiffs were able to subject the defendants to the immediate scrutiny of the Special Master, an agent of the Court under the Order of Reference. *See id.* at 6. "Appropriate relief then was achieved through the Court ordered and Court supervised procedure with the Special Master." *Id.* at 6–7.

Plaintiffs also argue that they are "required to utilize this system to achieve implementation of settlement agreements or hearing determinations," and that "once these administrative remedies become enforced under the terms and procedures of this class litigation, an actual preliminary injunction becomes a redundant and unnecessary assertion of the Court's supervision." The risk, plaintiffs assert, is that if plaintiffs cannot receive attorneys' fees under this mechanism, they will cease utilizing it. *See id.* at 7. Defendants did not respond to plaintiffs' *Buckhannon* argument. *See* Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Supplemental Motion for Attorneys' Fees and Costs ("Defs.' Supp. Opp.").

As a preliminary matter, the Court rejects plaintiffs' argument that because the Court granted plaintiffs' motion for summary judgment on the issue of liability, the plaintiffs have *de facto* "prevailing party" status for the duration of these actions with respect to any issues that arise for which attorneys' fees are incurred. The Order and Opinion of June 3, 1998 did change the legal relationship between the parties, but that change does not sustain plaintiffs' claims for attorneys' fees absent additional review. Although the D.C. Circuit has not articulated a standard for such a review under *Buckhannon,* the Eighth Circuit has addressed analogous proceedings in *Cody v. Hillard,* 304 F.3d 767 (8th Cir.2002). In *Cody,* the plaintiff class of state prisoners secured a court-ordered consent decree that governed the operation of the prison for twelve years. At the twelve-year mark, defendants moved to dissolve the consent decree, and the parties subsequently entered into a settlement agreement that stipulated, *inter alia,* that the action would be dismissed without prejudice. The court approved the settlement agreement and dismissed the case. Plaintiffs then moved for attorneys' fees for their efforts in the final stages of monitoring the consent decree, in their defense of the consent decree and in negotiation of the settlement agreement. *See id.* at 771–72.

The Eighth Circuit first concluded that the original consent decree was "clearly a 'judicially sanctioned change' in the parties' relationship" that conferred prevailing party status under *Buckhannon. Cody v. Hillard,* 304 F.3d at 773 (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. at 605, 121 S.Ct. 1835). The court also concluded, however, that the fact that a plaintiff "has once established prevailing party status does not make all later work compensable." *Id.*

21, 328 F.Supp.2d 50, 62 (D.D.C. Aug. 4, 2004).

Rather, compensation is limited by several factors:

First, the award of fees should take into account the degree of a plaintiff's success in the case as a whole. Second, an earlier established prevailing party status extends to postjudgment work only if it is a necessary adjunct to the initial litigation. Work that is more like a new, separate lawsuit requires a fresh determination of entitlement to fees. The test is whether the later issues litigated were inextricably intertwined with those on which the plaintiff prevailed in the underlying suit. Third, plaintiffs cannot over-litigate. Postjudgment litigation, like all work under the fee-shifting statutes, must be reasonable in degree. Services that were redundant, inefficient, or simply unnecessary are not compensable.

*Id.* (internal quotations and citations omitted). Upon review of the plaintiffs' counsel's effort, the court of appeals concluded that under this test the plaintiffs were prevailing parties in their post-judgment efforts under *Buckhannon.*[4]

▪ Applying the *Cody* standard to the instant motions, the Court notes that with respect to the first factor, it is undisputed that plaintiffs here have achieved broad success in this case. The Court found defendants liable for violations of Section 1983 for both subclasses, and plaintiffs have continued to secure defendants' compliance with the IDEA through their efforts to gain appropriate relief. *See* Opinion and Order of June 3, 1998; *Blackman*

*v. District of Columbia,* 277 F.Supp.2d 71 (D.D.C.2003). The second question therefore is whether the issues raised in the motions for injunctive relief for which fees now are sought are "inextricably intertwined" with the Court's finding of liability in the Order and Opinion of June 3, 1998 or whether they are "more like a new, separate lawsuit." *Cody v. Hillard,* 304 F.3d at 773. The Court concludes that the requests for injunctive relief were inextricably intertwined with the liability question on which plaintiffs already have prevailed.

In granting plaintiffs' motion for summary judgment on the issue of liability, the Court delayed trial on the remedy phase in anticipation that the parties could reach an agreement for a remedial plan. *See Blackman v. District of Columbia,* 185 F.R.D. at 5. The parties failed to reach such an agreement, and the Court appointed the Special Master and established in the Order of Reference an interim settlement structure to ensure that plaintiffs could gain relief for defendants' established violations that were causing irreparable harm until a final remedial structure is in place. Plaintiffs in the current matters gained relief through those procedures, and now request attorneys' fees for doing so. Notably, neither plaintiffs' motions for injunctive relief nor the resulting settlement of the motions raised new issues with regard to liability or any other issue. Rather, plaintiffs, who are undisputed members of the *Jones* subclass for which liability has been established, sought and achieved a

---

4. The court in *Cody* first noted that the defendants did not dispute that the plaintiffs were entitled to fees for monitoring compliance with the consent decree. *See Cody v. Hillard,* 304 F.3d at 774. The court then determined that the plaintiffs' efforts to defend the consent decree constituted work done to defend a remedy for a constitutional violation. The effort therefore was "inextricably intertwined with the litigation that yielded that remedy,"

and merited an award of fees. *See id.* at 774–75. Finally, the court concluded that the plaintiffs' settlement efforts also were compensable because the settlement agreement's provisions "correspond[ed] to the more general provisions of the original consent decree and the supplemental remedial orders [and] implement[ed] more general commands" in the consent decree. *Id.* at 775.

remedy for defendants' ongoing violations of the IDEA. Such an effort to secure a remedy through Court-established procedures is—and must be—inextricably intertwined with the Court's conclusion that the violation existed in the first instance. *See Cody v. Hillard,* 304 F.3d at 774–75. Otherwise, the Opinion and Order of June 3, 1998 is plaintiffs' victory in paper only.

 At the core of *Buckhannon* is the requirement that there must be a change in the legal relationship between the parties in order be to awarded fees, and that change must be judicially sanctioned in some way. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. at 604–05, 121 S.Ct. 1835. In this instance, the legal relationship between the parties changed upon the Court's finding of liability, and that change is actualized, practically speaking, in the preliminary injunctions entered and in the settlement agreements reached as a result of the efforts of the Special Master and the Order of Reference mechanism. As the Court's agent, expressly appointed to the task of resolving requests for immediate injunctive relief pursuant to the Order of Reference, the Special Master provides the process with sufficient Court oversight to ensure that the concerns expressed in *Buckhannon* regarding requisite judicial *imprimatur* of settlements are met. Plaintiffs are "prevailing parties" under *Buckhannon* and 42 U.S.C. § 1988.[5]

Having concluded that plaintiffs are prevailing parties under the statute, the Court now turns to the "reasonableness of the fees" sought under Section 1988. The Court has previously set forth the appro-

priate analytical framework for determining the award of attorneys' fees and costs in special education cases like this one where the plaintiffs have prevailed. *See Blackman v. District of Columbia,* 59 F.Supp.2d at 42–44. There is no need to reiterate that analysis here because defendants have not challenged the reasonableness of plaintiffs' attorneys' fees petitions. The Court therefore will grant plaintiffs' motions. In addition, the Court will grant plaintiffs' fee requests for counsel's effort in litigating the instant motions because the Court is granting those motions. Accordingly, it is hereby

ORDERED that Plaintiff's Motion for an Award of Attorneys' Fees and Costs filed by Diane Blackwell [629–1] is GRANTED; it is

FURTHER ORDERED that on or before September 3, 2004, defendants shall pay to plaintiff Diane Blackwell $12,894.23. If this amount is not paid on or before September 3, 2004, it will bear interest at the rate established by 18 U.S.C. § 1961 from September 4, 2004, the 31st day following entry of this Order; it is

FURTHER ORDERED that Plaintiff's Motion for an Award of Attorney's Fees and Costs filed by Victoria Harris [754–1] is GRANTED; it is

FURTHER ORDERED that on or before September 3, 2004, defendants shall pay to plaintiff Victoria Harris $10,964.53. If this amount is not paid on or before September 3, 2004, it will bear interest at the rate established by 18 U.S.C. § 1961 from September 4, 2004, the 31st day following entry of this Order; it is

---

5. The final prong of the *Cody* standard is irrelevant. Defendants have not asserted that plaintiffs' counsel's efforts were "redundant, inefficient, or simply unnecessary." *Cody v. Hillard,* 304 F.3d at 773. Indeed, defendants have not challenged the reasonableness of plaintiffs' fees, only the assertion that plaintiffs are entitled to an award as prevailing parties. Defendants' argument that plaintiffs' motions are untimely under the IDEA fails because this action was not brought pursuant to that statute. *See* Defs.' Supp. Opp. at 2–11.

**46**

FURTHER ORDERED that Plaintiff's Motion for an Award of Attorney's Fees and Costs filed by Dionne Timmons [767–1] is GRANTED; it is

FURTHER ORDERED that on or before September 3, 2004, defendants shall pay to plaintiff Dionne Timmons $4,528.34. If this amount is not paid on or before September 3, 2004, it will bear interest at the rate established by 18 U.S.C. § 1961 from September 4, 2004, the 31st day following entry of this Order.

SO ORDERED.