NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3041

DON A. MYNARD,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Don A. Mynard, of Gilbert, Arizona, pro se.

Joseph A. Pixley, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3041

DON A. MYNARD,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board
in DA0831060436-B-1.

_____

DECIDED: October 16, 2009

_____

Before BRYSON, CLEVENGER, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Don A. Mynard petitions for review of a final decision of the Merit Systems Protection Board denying his motion for attorney fees. The fee request pertains to Mr. Mynard's successful appeal of a reduction in his retirement pay as well as his later efforts to enforce that order by filing a petition for enforcement. We <u>affirm</u> the decision of the Board denying fees related to the merits appeal, but we <u>reverse</u> and <u>remand</u> the decision of the Board denying fees related to the enforcement proceedings.

BACKGROUND

Mr. Mynard served on active duty in the United States Army at various times and worked as a civilian employee with the Department of the Army until his retirement in 1994. Because he did not initially make a deposit into the Civil Service Retirement System ("CSRS") for his military service, the Office of Personnel Management ("OPM") reduced his CSRS annuity. Mr. Mynard successfully appealed that reduction to the Merit Systems Protection Board, which reversed OPM's action in an initial decision dated August 28, 2006. In that decision, the Board ordered OPM, within 20 days, to provide a means for Mr. Mynard to make a belated deposit for his military service. That order provided, in relevant part:

> I ORDER OPM to set a time limit under 5 C.F.R. § 831.2107(a)(1), before which the appellant may make the deposit for his military service to his former employing agency. OPM must complete this action within 20 days after this decision becomes final. OPM is further ORDERED to inform the appellant in writing of all actions taken to comply with this Order and of the date on which it believes it has fully complied.

That initial decision became final on October 2, 2006.

On November 15, 2006, after the 20-day period had expired, Mr. Mynard filed a petition for enforcement ("PFE") of the Board's decision. On November 29, 2006, a Board administrative judge ordered OPM to respond to the PFE. In response, OPM stated that it was attempting to comply with the Board's order and related that on October 4, 2006, it had sent a form to the Defense Finance Accounting Service ("DFAS") to obtain the information necessary to comply with the order. The administrative judge then conducted a telephone conference between the parties on December 19, 2006, after which she instructed OPM "to do whatever is necessary to resolve the matter as quickly as possible." The administrative judge issued a written

summary of that conference and provided an opportunity for either party to object to or supplement the summary.

During a second conference call, on January 9, 2007, OPM advised the Board that it had received the necessary information from DFAS and had fully complied with the Board's order. During that conference, the administrative judge advised the parties that if it appeared that OPM was in compliance with the order she would issue an Order to Show Cause informing the parties of her intention to dismiss the PFE as moot. The administrative judge then issued the Order to Show Cause, which indicated that if Mr. Mynard did not respond the PFE would be dismissed as moot. Mr. Mynard did not respond, and the administrative judge dismissed the PFE on January 25, 2007.

On February 13, 2007, Mr. Mynard filed a motion for attorney fees for work performed during the merits phase of his appeal as well as work related to the PFE. A March 22, 2007, show cause order advised Mr. Mynard that the portion of his request related to the merits phase was untimely and that it did not appear that he was eligible for fees related to the PFE because there was no enforceable judgment on the merits of the PFE. Mr. Mynard responded that with respect to the merits phase the deadline should be waived because he understood the deadline for filing a motion for attorney fees to depend on the date of final settlement rather than the date of the Board's final decision and also because he had cooperated with OPM in the agency's request for additional time to comply with the Board's order. On June 14, 2007, the administrative judge concluded that Mr. Mynard had been informed of the deadline for filing a motion for attorney fees and that he had not made a showing of good cause to waive the filing deadline; the administrative judge therefore dismissed the portion of the motion related

to the merits phase as untimely filed. With respect to the portion of the attorney fee request related to the PFE, the administrative judge concluded that the Supreme Court's decision in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources</u>, 532 U.S. 598 (2001), precluded such an award "since no enforceable judgment was issued on the merits for purposes of a request for attorney fees."

On review, the full Board affirmed the administrative judge's determination that the attorney fee petition relating to the merits phase was untimely. However, the Board disagreed with the administrative judge's conclusion that <u>Buckhannon</u> requires a separate enforceable judgment on the merits. The Board concluded instead that fees are available if "the relief the party achieves carries with it sufficient judicial, or in this case, Board imprimatur." The Board therefore remanded the case to the administrative judge for further consideration. On remand, the administrative judge stated that to be a prevailing party for attorney fee purposes in an enforcement proceeding a party must show both that the agency was not in compliance and that the relief obtained was caused by the initiation of the enforcement proceedings. The administrative judge determined that in this case Mr. Mynard had not shown that his filing of a PFE caused OPM to comply as "OPM was already in the process of complying with the August 28, 2006 Order when the appellant filed his PFE." Based on his finding that OPM was already complying before the PFE was filed, the administrative judge concluded that Mr. Mynard could not collect attorney fees for work performed during the enforcement phase. That determination became the final decision of the Board on September 18, 2008. Mr. Mynard then brought this appeal.

DISCUSSION

1. By regulation, a fee petition for work done before the Merit Systems Protection Board generally must be filed within 60 days after the Board decision becomes final. See 5 C.F.R. § 1201.203(d). Under that regulation, Mr. Mynard's attempt to collect fees for his efforts during the merits phase of his appeal was untimely. The Board's initial decision was issued on August 28, 2006, and became final on October 2, 2006. Mr. Mynard's fee petition was therefore due by December 1, 2006. Because the petition was filed on February 13, 2007, it was 74 days late.

The administrative judge concluded that no good cause was shown for Mr. Mynard's tardiness in making that submission pursuant to 5. C.F.R. § 1201.12, as the time for filing a fee petition was clearly indicated on the initial decision and Mr. Mynard was represented by counsel at all times. On appeal, the Board fully considered and rejected Mr. Mynard's argument that because the administrative judge granted OPM additional time to comply with her August 28, 2006, order, he believed he would also be afforded additional time to file his fee petition. As the Board noted, "OPM's failure to meet the time limits set forth in the Board's order is irrelevant to the question of whether the appellant acted diligently and prudently with respect to his request for attorney fees."

Mr. Mynard repeats the same argument on appeal, stating that "[a]t the hearing the [administrative judge] granted an extension of time to OPM and implied the same courtesy would be granted to appellant . . . ." However, the administrative judge's written summary of that conference is devoid of any reference to the granting of a time extension for an attorney fee petition. Mr. Mynard neither objected to nor attempted to supplement that summary when he had the opportunity to do so, and he cannot now

attempt to rely on statements that are not reflected in the record. Accordingly, there is no evidence that Mr. Mynard was given reason to believe that his attorney fee application for work during the merits phase of the appeal would be accepted beyond the 60-day regulatory time limit. We therefore affirm the Board's conclusion that Mr. Mynard did not demonstrate good cause for his late filing. See Mendoza v. Merit Sys. Prot. Bd., 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc) ("[W]hether the regulatory time limit for an appeal should be waived based upon a showing of good cause is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board.").

2. Mr. Mynard also argues that he should be granted attorney fees for work performed during the enforcement phase in preparing his petition for enforcement. The government contends that his argument in that regard is foreclosed by the Supreme Court's decision in Buckhannon. In that case, which has been held applicable to fee applications before the Board, see Sacco v. Dep't of Justice, 317 F.3d 1384 (Fed. Cir. 2003), the Supreme Court held that a change in conduct that may have been prompted by the lawsuit but was not the result of a court order lacked "the necessary judicial imprimatur on the change" to render the plaintiff a "prevailing party" for purposes of an attorney fee award. The government argues that Buckhannon's holding that "prevailing party" status can be obtained only where there is a judicially sanctioned change in the legal relationship of the parties means that "the mere filing of a PFE in a board case, as a stand alone action, does not materially alter 'the legal relationship of the parties,' so as to confer 'prevailing party' status upon the filer." The government relies on various precedents of this court recognizing the Buckhannon rule that prevailing party status is

obtained only if there is "an actual, court-ordered alteration in the legal relationship [between] the parties." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 939 (Fed. Cir. 2007); see also Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005); Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1380 (Fed. Cir. 2003). However, none of the cases the government cites deals with a situation in which attorney fees are requested for work performed in enforcing a prior judgment that altered the legal relationship between the parties, as is the case here.

"[A] compliance proceeding is a continuation of the original action." Greco v. Dep't of the Army, 852 F.2d 558, 561 (Fed. Cir. 1988). As the Board noted in this case,

> [T]he type of decisions the Board and its administrative judges may issue during the compliance phase of an appeal are not themselves enforceable decisions that alter the legal relationships of the parties; rather, the Board's role in the compliance phase of an appeal is to determine whether the parties' actions are in compliance with a Board order or a settlement agreement that altered the legal relationship of the parties during the merits phase of the appeal.

Therefore, courts have looked to the entirety of the appeal, including the merits phase, to determine whether attorney fees are appropriate for work performed during the enforcement phase. See Johnson v. City of Tulsa, Okla., 489 F.3d 1089 (10th Cir. 2007); Cody v. Hillard, 304 F.3d 767 (8th Cir. 2002); Blackman v. Dist. of Columbia, 328 F. Supp. 2d 36 (D.D.C. 2004).

In Cody, the Eighth Circuit determined that attorney fees could be granted for work performed in monitoring a private settlement agreement between a class of South Dakota prisoners and the state. The court reasoned that the initial consent decree effected the necessary court-ordered alteration in the legal relationship between the parties and that the "earlier established prevailing party status extends to postjudgment

work . . . if it is a necessary adjunct to the initial litigation." 304 F.3d at 773. The court explained, "[t]he test is whether the later issues litigated were inextricably intertwined with those on which the plaintiff prevailed in the underlying suit." Id. "Reasonable postjudgment monitoring," the court held, is compensable. Id. at 774. In Blackman, the district court applied that standard and awarded fees for enforcement efforts associated with an earlier order, explaining that "an effort to secure a remedy through Court-established procedures is—and must be—inextricably intertwined with the Court's conclusion that the violation existed in the first instance. Otherwise, the Opinion and Order . . . is plaintiffs' victory in paper only." 328 F. Supp. 2d at 45.

In Johnson, the Tenth Circuit rejected the argument that Buckhannon requires a separate court order or decree related to post-judgment enforcement in order for a party to be considered a "prevailing party" for purposes of awarding attorney fees. 489 F.3d at 1103. The court held that measures that a party finds necessary to enforce a court's remedy cannot be divorced from the proceedings that led to obtaining that remedy, and that an attorney fee award is available for enforcement activities that are necessary to protect a judicially enforceable consent decree. Id. at 1105, citing Pennsylvania v. Del. Valley Citizens' Council for Clear Air, 478 U.S. 546 (1986). Thus, the court concluded, when there is an earlier judicially sanctioned change in the parties' legal relationship, "attorney fees incurred for reasonable efforts to enforce that change—that is, protect the fruits of the Decree—are compensable." Id. at 1108. Together, these decisions establish that a court's authority to enforce its orders gives judicial imprimatur to reasonable enforcement efforts.

The government attempts to distinguish those cases on the ground that each involved an underlying consent decree or enforceable judgment and that no such court-ordered change is present here. But that argument ignores the fact that the Board ordered OPM to provide Mr. Mynard with an opportunity to make a deposit into his CSRS account within 20 days and to inform him in writing of all actions taken to comply with the Board's order. Like a court, the Board has authority to order corrective action when it determines that a party is not in compliance with a Board order. See Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 732-33 (Fed. Cir. 1984). The Board's order of August 28, 2006, effected the required change in the relationship between the parties, and the subsequent enforcement efforts are compensable because they are linked to that order.

The government contends that in Christina A. v. Bloomberg, 315 F.3d 990 (8th Cir. 2003), the Eighth Circuit rejected the argument Mr. Mynard presents here. In Christina A., the court held that a court's enforcement jurisdiction over a private settlement agreement "is not enough to establish a judicial 'imprimatur' on the settlement contract." Id. at 993. However, the court in that case specifically distinguished the enforcement of a private settlement agreement from the enforcement of a consent decree, noting that "consent decrees are distinguishable from private settlements by the means of enforcement. Consent decrees are enforceable through the supervising court's exercise of its contempt powers, and private settlements are enforceable only through a new action for breach of contract." Id. Unlike in Christina A., where the parties had independently agreed to alter their behavior, in this case the Board directly ordered the change in OPM's relationship with Mr. Mynard.

In response to the fee request for the enforcement efforts, the administrative judge found that OPM was substantially in compliance with the August 28, 2006, order based upon OPM's assertion that prior to the 20-day time limitation in the order it had sent forms to the Defense Finance Accounting Service to obtain the information needed to comply with the order. While the agency representative stated to the Board that OPM had initiated compliance efforts shortly after the Board's order became final, OPM did not set a time limit for Mr. Mynard to make a deposit for his military service within 20 days of the order becoming final, and it failed to keep him informed of the steps it had taken to comply with the Board's order, as the order directed. Therefore, even if the steps taken by OPM constituted partial compliance with the order, it is clear that those steps did not satisfy each of the requirements set forth in the order. Indeed, the government concedes that this court may conclude that there is not substantial evidence to support the finding that that OPM was in substantial compliance with the August 28, 2006, order.

The government argues that we should remand this case to the Board in order to provide it with an opportunity to supplement the record with evidence of its efforts to comply with the Board's order prior to the filing of the PFE. We see no justification for giving the government a second chance to prove compliance, given that it failed to do in the earlier proceeding before the Board even though it bore the burden of doing so. As we explained in Garstkiewicz v. United States Postal Service, 981 F.2d 528, 530 (Fed. Cir. 1992), "[t]he burden of compliance with the Board's Order was not upon [the petitioner], but upon [the agency]." Moreover, the government does not suggest that, in remand proceedings, it would be able to show that OPM satisfied the requirement of the

order that it keep Mr. Mynard apprised of the steps it had taken to comply with the Board's order, as it appears that the first that Mr. Mynard learned of any steps that were being taken to comply with the order was after he had filed his petition for enforcement. We therefore conclude that the Board's finding that Mr. Mynard was not entitled to fees because OPM had substantially complied with the Board's order is not supported by substantial evidence.

While Mr. Mynard is a prevailing party, in order to secure fees he must also establish that an award is "warranted in the interest of justice." 5 U.S.C. § 7701(g). The steps OPM took on October 4, 2006, in response to the Board's order may be pertinent to that issue. Thus, having concluded that there is not substantial evidence supporting a finding that OPM complied with the Board's order, we remand to the Board for further proceedings to determine whether a fee award is warranted in the interest of justice, and if so to determine the appropriate amount of the award.