**The DISTRICT OF COLUMBIA HOSPITAL ASSOCIATION, et al., Appellees,**

v.

**DISTRICT OF COLUMBIA and Herbert Weldon, Deputy Director for Health Care Finance of Medical Assistance Administration, Appellants.**

No. 99–7239.

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 2000.

Decided July 21, 2000.

---

777

Donna M. Murasky, Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the briefs, argued the cause for appellants.

Christopher L. Keough, with whom Ronald N. Sutter and Kimberly N. Brown were on the brief, argued the cause for appellees.

Before SILBERMAN and SENTELLE, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Judge BUCKLEY.

BUCKLEY, Senior Judge:

The District of Columbia appeals the district court's ruling that its method of computing certain payments to hospitals violated the federal Medicaid statute. Because we agree that the District of Columbia's interpretation of the law is contrary to its plain meaning, we affirm the district court's grant of summary judgment to the District of Columbia Hospital Association.

I. BACKGROUND

A. Regulatory Framework

The Medicaid statute, Subchapter XIX of the Social Security Act, establishes a cooperative plan between the federal government and the States to provide medical services to low-income individuals. 42 U.S.C. §§ 1396–1396v (1994 & Supp. III 1997). The program is jointly funded by the Federal and State governments and is administered by the States pursuant to federal guidelines. *See generally id.* §§ 1396a, 1396b; 42 C.F.R. § 430.0–.25 (1999). The statute treats the District of Columbia ("District") as a State. 42 U.S.C. § 1396d(b) (Supp. III 1997). To qualify for federal funding, a State must have its own Medicaid plan approved by the Health Care Financing Administration ("HCFA") of the United States Department of Health and Human Services. *Id.* § 1396; 42 C.F.R. § 430.10.

All State plans are required to provide Medicaid beneficiaries with inpatient hospital services. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(1). Because of the greater costs it found to be associated with the treatment of indigent patients, Congress has directed that hospitals providing inpatient care must be compensated under the Medicaid program at rates that "take into account ... the situation of hospitals which serve a disproportionate number of low-income patients with special needs." *Id.* § 1396a(a)(13)(A)(iv); *see also* H.R.Rep. No. 100–391(1), at 524, *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–344 (discussing adjustments in payments to "disproportionate share hospitals" ("DSH")). The adjustments mandated by Congress ("DSH adjustments" or "DSH payments") are achieved through increases in the "rate or amount of payment for such services." 42 U.S.C. § 1396r–4(a)(1)(B).

States may select one of three complex formulae for calculating the DSH payments. *Id.* § 1396r–4(c)(1), (2), (3). Un-

der the formula selected by the District ("(c)(1) formula"), *see* D.C. Mun. Regs. tit. 29, § 908.4(b) (1999), the DSH adjustment must equal "at least the product of [ ] the amount paid under the State plan to the hospital for operating costs for inpatient hospital services" ("base amount"), multiplied by the hospital's "disproportionate share adjustment percentage." 42 U.S.C. § 1396r–4(c)(1). Because this case hinges on the calculation of the base amount, we will spare the reader the labyrinthine process by which the disproportionate share adjustment percentage is derived. We simply observe that it alone would justify the Supreme Court's description of the Medicaid statute as "an aggravated assault on the English language, resistant to attempts to understand it." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 n. 14, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (quoting *Friedman v. Berger*, 409 F.Supp. 1225, 1226 (S.D.N.Y.1976)).

## B. The District of Columbia's Plan

The District's Medicaid plan is administered by an agency within the Department of Human Services that was called the Commission on Health Care Finance ("CHCF") at the time this controversy originated. Although it has since been renamed the Medical Assistance Administration, the parties have continued to refer to the agency as the CHCF, as will we.

District of Columbia residents who qualify for Medicaid on the basis of their eligibility for assistance under the Temporary Assistance for Needy Families program (formerly Aid to Families with Dependent Children) are required by the District's Medicaid Managed Care Amendment Act of 1992 to enroll in managed care plans. D.C.Code Ann. § 1–359(d)(2) (1999 Repl. & Supp.2000). Other Medicaid beneficiaries continue to receive services on a fee-for-service basis. The District pays the managed care organizations ("MCOs") that administer the managed care plans a fixed pre-paid amount per Medicaid enrollee. The MCOs, in turn, are responsible for providing these enrollees with all the health care services to which they are entitled under the statute, including inpatient hospital services provided under contract between the MCOs and participating hospitals. *Id.* § 1–359(d)(2), (3).

## C. The Litigation

Without delving too deeply into the tortuous history of this litigation, it suffices to say that the District and the District of Columbia Hospital Association ("Association") have been engaged for the better part of the past decade in an argument over the District's calculation of DSH payments. In 1994, the Association filed a suit in which it claimed, among other things, that the District's method of computing DSH adjustments violated the Medicaid statute by failing to take into account the services provided managed care patients through the MCOs. While the suit was pending, a newly appointed Commissioner of the CHCF agreed to revise the District's methodology. Because the parties believed this would resolve their dispute, the district court dismissed the suit as moot. Subsequent to the dismissal of the case, it became apparent that the parties were not in fact in accord as to how DSH adjustments should be computed. The bone remaining in contention was the District's failure to include, in the (c)(1) formula's base amount, the operating costs incurred by hospitals in providing inpatient services to Medicaid managed care patients.

In 1998, the Association initiated the present action seeking a declaratory judgment that the District's exclusion of Medicaid managed care patients from the base amount violated the Medicaid statute. The Association subsequently filed a motion requesting the district court to compel the District to comply with representations the Association claims the District made in settling the earlier litigation. The court granted the Association's motion for summary judgment based on its holding that the District's method of calculating DSH

payments was contrary to law, and it granted the Association's motion to compel compliance with its version of the earlier understanding. *District of Columbia Hosp. Ass'n v. District of Columbia,* 73 F.Supp.2d 8 (D.D.C.1999). The District filed a timely appeal, and we have jurisdiction to review the district court's final order pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

We review a grant of summary judgment *de novo,* applying the same standard as the district court. *See, e.g., Everett v. United States,* 158 F.3d 1364, 1367 (D.C.Cir.1998), *cert. denied,* 526 U.S. 1132, 119 S.Ct. 1807, 143 L.Ed.2d 1010 (1999). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

The dispositive question in this case is one of statutory interpretation. Specifically, we are concerned here with the proper application of the formula selected by the District for the computation of the DSH adjustment. That formula provides that the adjustment must

> be in an amount equal to at least the product of (A) the amount paid *under* the State plan to the hospital for operating costs for inpatient hospital services (of the kind described in section 1395ww(a)(4) of this title), and (B) the hospital's disproportionate share adjustment percentage (established under section 1395ww(d)(5)(F)(iv) of this title)[.]

42 U.S.C. § 1396r–4(c)(1) (emphasis added).

The controversy in this case centers on the meaning to be given the word "under" in the quoted text. The District contends that it is not required to include the cost of providing inpatient services to Medicaid managed care patients in the base amount because the hospitals receive payments for those services from MCOs rather than from the District. Because the payments are not made directly by the District, it reasons that they are not made "under the State plan."

It is axiomatic that "[t]he starting point in statutory interpretation is the language of the statute itself." *Ardestani v. INS,* 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (internal quotation marks and brackets omitted). The Supreme Court has observed that "[t]he word 'under' has many dictionary definitions and must draw its meaning from its context." *Id.* We see nothing in the context of the Medicaid statute, however, that would require us to give the word other than its ordinary meaning. "Under" is defined as "required by[,] in accordance with[, or] bound by." Webster's Third New International Dictionary 2487 (1981); *see also Ardestani,* 502 U.S. at 135, 112 S.Ct. 515 (finding "the most natural reading" of "under" in context of Equal Access to Justice Act to mean " 'subject [or pursuant] to' or 'by reason of the authority of' ") (quoting *St. Louis Fuel and Supply Co. v. FERC,* 890 F.2d 446, 450 (D.C.Cir.1989)).

Although payments from MCOs to hospitals for the care of Medicaid patients are not made directly by the District, they are clearly made pursuant to, and under the authority of, the District's Medicaid plan. MCOs may not receive payment for services to Medicaid patients unless they have completed a Medicaid managed care provider agreement with the District. D.C. Mun. Regs. tit. 29, § 5308.1. The contracts between the MCOs and the hospitals that serve their Medicaid enrollees are closely regulated by the District. For example, District regulations require MCOs to submit their contracts with hospitals to the District for prior approval, *id.* § 5313.1; to notify the District before effecting any changes in such agreements, *id.* § 5304.2–.3; to contract only with hospitals located in the District, *id.* § 5313.9; and to assure that financial and programmatic information maintained by the hospital regarding Medicaid managed care pa-

tients will be available for inspection by the MCO or the District. *Id.* § 5313.10(d).

Moreover, we can find nothing in the statute that would require us to confine "the amount paid under [a] State plan to [a] hospital" to that paid by the State itself. To the contrary, if Congress had so intended, it could have specified that only a State's "direct" payments were to be taken into account, as it did in the preceding subsection of the statute. *See* 42 U.S.C. § 1396r–4(b)(3)(A)(i)(II) (referring to "the amount of the cash subsidies for patient services received *directly* from State and local governments") (emphasis added). That it did not do so here is compelling evidence that Congress did not intend to limit the computation of payments to those made directly by the District. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and citation omitted).

If more were required, our construction of the statutory language is wholly consistent with Congress's purpose in creating the DSH adjustment. *See Holloway v. United States,* 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999) ("In interpreting the statute at issue, we consider not only the bare meaning of the critical word or phrase but also its ... purpose in the statutory scheme.") (internal quotation marks and brackets omitted). "Congress's 'overarching intent' in passing the disproportionate share provision was to supplement the ... payments of hospitals serving 'low income' persons." *Legacy Emanuel Hosp. and Health Ctr. v. Shalala,* 97 F.3d 1261, 1265 (9th Cir.1996) (quoting *Jewish Hosp. v. Secretary of Health & Human Serv.,* 19 F.3d 270, 275 (6th Cir. 1994)). As the Ninth Circuit has noted, "[p]atients meeting the statutory require-

ments for Medicaid do not cease to be low-income patients on days that the state does not pay Medicaid inpatient hospital benefits." *Id.* at 1266. Similarly, patients who must be enrolled in MCOs pursuant to the District's Medicaid plan do not cease to impose higher costs on the hospitals that serve them.

■ Finally, we are unpersuaded by the District's offer of a letter from the General Accounting Office asserting that States have the discretion to exclude Medicaid managed care patients from their calculation of the maximum DSH adjustment a given hospital may receive under another section of the Medicaid statute. As the Supreme Court has recently made clear, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris County,* —— U.S. ——, ——, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000). This is a reference to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which holds that courts must defer to an agency's permissible construction of a statute it is charged with administering when "the statute is silent or ambiguous with respect to the specific issue" before the court. *Id.* at 843, 104 S.Ct. 2778. Because the provision at issue here is unambiguous, we owe no deference to a contrary construction even if formally adopted by the Secretary of Health and Human Services.

## III. CONCLUSION

Because the District's interpretation is contrary to the plain meaning and purpose of the Medicaid statute, we hold that the District may not exclude the operating costs incurred by hospitals in their service of Medicaid managed care patients in calculating DSH payments pursuant to the (c)(1) formula. We have no need, therefore, to reach the district court's alterna-

tive holding based on the Association's motion to compel. The district court's grant of summary judgment to the Association is therefore

*Affirmed.*