Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 1, 2002      Decided February 7, 2003

No. 01-5265

UNITED STATES OF AMERICA EX REL. MARY R. HAMPTON,
APPELLANT

UNITED STATES OF AMERICA,
APPELLEE

v.

COLUMBIA/HCA HEALTHCARE CORP., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(99cv03294)

———

*Mike Bothwell* argued the cause for appellant. With him on the briefs was *G. Mark Simpson*.

*Michael D. Granston*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

On the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *Douglas N. Letter*, Litigation Counsel, U.S. Department of Justice, and *Michael F. Hertz* and *Jamie Ann Yavelberg*, Attorneys.

*Richard P. Bress* argued the cause for appellees Columbia/HCA Healthcare Corp, *et al.* With him on the brief were *Roger S. Goldman, Adam S. Hoffinger*, and *Robert A. Salerno*. *Jennifer C. Archie* entered an appearance.

Before: Randolph and Rogers, *Circuit Judges*, and Williams, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* Randolph.

Randolph, *Circuit Judge*: Mary Hampton filed a complaint in the Middle District of Georgia on February 12, 1999, under the False Claims Act, 31 U.S.C. §§ 3729–3733. The Act allows a private person (a relator) to bring a *qui tam* civil action "in the name of the Government," *id.* § 3730(b)(1), and to receive part of any proceeds of the suit, *id.* § 3730(d). Hampton's complaint alleged that the defendants—Columbia/HCA Healthcare Corp. ("HCA"), Clinical Arts Comprehensive Services, Inc. d/b/a Clinical Arts Homecare ("Clinical Arts") (a Georgia subsidiary of HCA), several Clinical Arts employees, and others—had improperly billed the government under the Medicare program for home health services. In December 1999, the Judicial Panel on Multidistrict Litigation transferred Hampton's case and twenty-nine others from various districts to the District of Columbia under 28 U.S.C. § 1407 for consolidated pretrial proceedings.

The United States and HCA executed a partial settlement agreement for thirteen of the complaints, including Hampton's, on December 14, 2000. HCA agreed to pay the United States more than $731 million and the United States agreed to move to dismiss numerous claims against HCA, including claims about the home health billing practices of more than six hundred HCA subsidiaries (among them Clinical Arts) in multiple states.

Pursuant to the agreement, on February 14, 2001, the United States intervened in Hampton's case with respect to

the improper billing claims against HCA and Clinical Arts, but declined to intervene with respect to the claims against the individual employees. One month later the government, invoking the False Claims Act's first-to-file rule for *qui tam* actions, 31 U.S.C. § 3730(b)(5), moved to dismiss the claims in which it had intervened. The government argued that Hampton's complaint against HCA and Clinical Arts was barred because it was an action related to previously filed *qui tam* suits, and that she was therefore not entitled to part of the proceeds of the settlement. Also relying on the first-to-file rule, HCA moved to dismiss Hampton's entire complaint. The district court granted the motions to dismiss, disposing of the improper billing claims against HCA, Clinical Arts, and the individual defendants. The court held that another relator had beaten Hampton to the courthouse by about eighteen months.

There is reason to doubt our jurisdiction over Hampton's appeal. In general, a district court decision is final and appealable within the meaning of 28 U.S.C. § 1291 only if it is final with respect to all the parties and all their claims. *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 742–43 (D.C. Cir. 1998); *Franklin v. Dist. of Columbia*, 163 F.3d 625, 628–29 (D.C. Cir. 1998). Some of the cases consolidated with Hampton's are still pending. Although FED. R. CIV. P. 54(b) allows the entry of a final judgment in "an action" on "one or more but fewer than all of the claims or parties" if the district court expressly determines "that there is no just reason for delay," the court dismissed Hampton's complaint without issuing a Rule 54(b) certification.

Whether consolidated cases retain their separate identity or become one case for purposes of appellate jurisdiction has divided the courts of appeals, as is thoroughly discussed in 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.7, at 602–08 (2d ed. 1992 & Supp. 2002), from which we borrow. Some circuits hold that consolidated cases remain separate actions and no Rule 54(b) certification is needed to appeal the dismissal of any one of them. *See Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994); *Albert v. Maine*

*Cent. R.R.*, 898 F.2d 5, 6–7 (1st Cir. 1990).[1]    Others treat consolidated cases as a single action, *see Spraytex, Inc. v. DJS&T & Homax Corp.*, 96 F.3d 1377, 1382 (Fed. Cir. 1996); *Huene v. United States*, 743 F.2d 703, 705 (9th Cir. 1984); *Trinity Broad. Corp. v. Eller*, 827 F.2d 673, 675 (10th Cir. 1987), or presume that they are, *Hageman v. City Investing Co.*, 851 F.2d 69, 71 (2d Cir. 1988), allowing the presumption to be overcome " '[i]n highly unusual circumstances,' " *Kamerman v. Steinberg*, 891 F.2d 424, 429 (2d Cir. 1989) (quoting *Hageman*, 851 F.2d at 71).    Still other circuits apply no hard and fast rule, but focus on the reasons for the consolidation to determine whether the actions are one or separate.    *See Hall v. Wilkerson*, 926 F.2d 311, 314 (3d Cir. 1991); *Eggers v. Clinchfield Coal Co.*, 11 F.3d 35, 39 (4th Cir. 1993); *Road Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967 F.2d 145, 149–51 (5th Cir. 1992); *Brown v. United States*, 976 F.2d 1104, 1107 (7th Cir. 1992); *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 711–12 (8th Cir. 1996); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1048–49 (11th Cir. 1989).

While our decisions have not foreclosed the issue, they suggest that our court falls into the last camp.  We have held that when a district court consolidates cases and treats them as such "for all purposes," an order deciding fewer than all the claims of all the parties cannot be appealed without a Rule 54(b) certification.  *Phillips v. Heine*, 984 F.2d 489, 490 (D.C. Cir. 1993) (internal quotation marks omitted); *see also Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am.*, 808 F.2d 133, 136 & n.3 (D.C. Cir. 1987).  The clear implication is that if the consolidation is not "for all purposes," a judgment entirely disposing of any one of the cases might be considered final and appealable.  Although Hampton's case and twentynine others were consolidated, they were consolidated only for pretrial proceedings, the extent of consolidation authorized by the statute.  *See* 28 U.S.C. § 1407(a).  At the

---

[1] The First Circuit's position may not be as firm as stated in the text.  *See Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am.*, 808 F.2d 133, 136 n.3 (D.C. Cir. 1987).

conclusion of pretrial proceedings the cases were to be remanded to the districts from which they were transferred. *Id.* When final judgments were then rendered, appeals would lie in the courts of appeals for their respective districts. Treating the consolidated cases as one action at this stage would therefore not ensure only a single appeal—one of the objectives of the final judgment rule. And to force Hampton to await the outcome of the remaining cases before appealing would risk needless complications in the event one or more of the pending actions was transferred back to the district where it began. Despite the consolidation, Hampton's action thus retained its separate status and the order dismissing it was a final judgment, appealable without the need for a Rule 54(b) certification. *See Brown*, 976 F.2d at 1107.

On the merits, the dispute centers on the False Claims Act's first-to-file rule: "When a person brings [a *qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The district court held that a *qui tam* action filed before Hampton's by a relator named Randal Boston barred Hampton's improper billing claims. Boston had filed his complaint against HCA on August 8, 1997, in the Northern District of Texas, also alleging that HCA submitted false claims to Medicare.

Other courts of appeals have interpreted the words of § 3730(b)(5)—"related action based on the facts underlying the pending action"—to bar "actions alleging the same material elements of fraud" as an earlier suit, even if the allegations "incorporate somewhat different details." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001); *see also United States ex rel. LaCorte v. Smith-Kline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232–34 (3d Cir. 1998). Hampton does not object to this standard, and there are good reasons for us to adopt it.

Congress added § 3730(b)(5) to the False Claims Act in 1986. We described the purpose of the 1986 amendments to the Act in *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994), a decision interpreting

another provision—31 U.S.C. § 3730(e)(4)(A), which bars *qui tam* suits "based upon the public disclosure of allegations or transactions" in specified types of public proceedings, *id.*, including legal proceedings. *See Springfield*, 14 F.3d at 652. The history of the False Claims Act "*qui tam* provisions demonstrates repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior. The 1986 amendments . . . must be analyzed in the context of these twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *Id.* at 651. *Cf. United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 686–88 (D.C. Cir. 1997). The *Springfield* and *Findley* decisions interpreted the words "based upon . . . allegations or transactions" in § 3730(e)(4)(A) to mean " 'material elements of the fraudulent transaction.' " *Findley*, 105 F.3d at 687 (quoting *Springfield*, 14 F.3d at 655). The language of § 3730(b)(5) differs from that of § 3730(e)(4)(A), but the objectives of § 3730(b)(5)—encouraging whistle-blowing and discouraging opportunistic behavior—are the same. The only possibly relevant difference in the language of the two provisions is the use of "facts" in § 3730(b)(5) versus "allegations or transactions" in § 3730(e)(4)(A). In this case the difference is of no consequence, since we are comparing complaints rather than findings of fact. *Cf. Lujan*, 243 F.3d at 1189.

We therefore hold that § 3730(b)(5) bars any action incorporating the same material elements of fraud as an action filed earlier. In doing so we reject another possible test, one barring claims based on "identical facts." It might be argued that a single sentence from the legislative history, which states that "private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances," S. REP. NO. 99–345, at 25 (1986), supports such a test. But § 3730(b)(5) does not say that the later action must rest on identical facts, and the purposes of the *qui tam* provisions are against such a reading. *See Lujan*, 243 F.3d at 1188–89; *LaCorte*, 149 F.3d at 232–34.

Even though Hampton does not contest the "same material elements" standard, she argues that it does not support the district court's decision. To evaluate her argument it is necessary to understand the elements of the fraud in question. Hampton and Boston both alleged violations of § 3729 of the False Claims Act. One way of establishing a violation of this section is to prove that the defendant presented or conspired to present a claim to the government, that the claim was false, and that the defendant knew that the claim was false. *See* § 3729(a)(1)-(3);[2] JOHN T. BOESE, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 2.01[A], at 2–8 (2d ed. Supp. 2002).

Hampton thinks her complaint differs significantly from Boston's because it named different defendants. Boston sued only HCA. Hampton sued not only HCA but also HCA's subsidiary Clinical Arts and several Clinical Arts employees. As Hampton sees it, Boston's complaint cannot possibly have covered fraud by Clinical Arts and its employees because it (1) fails to name Clinical Arts or its employees as defendants and (2) specifically mentions fraud at HCA home health care subsidiaries in six states that do not include Georgia. But these are not differences in the material elements of the fraud. Boston was a senior manager in HCA's home care group. He alleged a corporate-wide problem, revealed

---

[2] Section 3729(a) provides, in relevant part:

Any person who—
(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]
(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
. . . .
is liable to the United States Government for a [specified] civil penalty . . . .

through internal audits, in which HCA perpetrated fraud in providing home health care services through numerous subsidiaries. It is true that Boston's complaint mentioned instances of fraud at particular home health agencies in only six specific states, not including Georgia. But Boston's complaint described these as "examples" and "samplings" of "a huge number of illegal payments from Medicare . . . received by Columbia/HCA's 550 home health locations in 37 states." Given Boston's broad allegations based on his position as an HCA insider, Hampton's naming Clinical Arts—a specific HCA subsidiary—and naming individual employees of Clinical Arts were merely variations on the fraud Boston's complaint described.

Hampton also distinguishes her suit from Boston's on the basis that HCA's subsidiaries rather than its corporate headquarters perpetrated the fraud (except for concealment of the subsidiaries' actions), and that fraud at any given HCA home health care subsidiary occurred independently of fraud at any other one. Because of this, the nature and extent of Medicare fraud in the provision of home health services varied greatly among different subsidiaries, as did the type and percentage of improperly billed visits.

We see no substantial difference between the claims. Hampton alleged that she learned of HCA and Clinical Arts' fraudulent Medicare billing practices while they were providing home health care for her mother beginning in 1994. She claimed that HCA and Clinical Arts submitted improper bills for services for her mother and other patients: the companies billed for services that were miscoded; already paid for; performed by others; never administered; or supposedly administered to Hampton's mother after she died in 1996. Hampton also claimed that HCA and Clinical Arts submitted bills for supplies and medications that were unnecessary or never received; and that they billed for services to patients who did not qualify under the Medicare guidelines, did not need treatment, or were not charged required copayments. The companies submitted false or inaccurate documentation

to the government and, so she alleged, shredded documents in order to destroy evidence of the fraud.

Boston's allegations were along very much the same lines. He asserted that HCA home health subsidiaries billed the government for services that did not meet the Medicare eligibility criteria, for undocumented services, and for services not medically necessary. He also alleged that they submitted false or inaccurate Medicare documentation and destroyed documents.

Hampton also raises an issue about the difference in the time periods covered by the two complaints. Hampton's complaint covered Clinical Arts services beginning in 1994. Boston's covered Clinical Arts services during its status as a subsidiary of HCA. Hampton says in her brief that HCA did not acquire Clinical Arts until 1996. If Hampton is right about the timing of the acquisition, she might have a valid argument that part of her complaint covered a different set of facts: fraud allegedly committed by Clinical Arts before it became an HCA subsidiary. But nothing in the record establishes when the acquisition occurred. And in any event, Hampton did not make this argument to the district court. Arguments not presented to the district court will not be heard on appeal absent exceptional circumstances, *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084–85 (D.C. Cir. 1984), and there are none in this case.

In short, Hampton's action was related to and based on the same underlying facts as Boston's within the meaning of the first-to-file rule and the district court correctly dismissed it.

*Affirmed.*