# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 14, 2006            Decided July 21, 2006

No. 04-7139

MARY ANN BLACKMAN, MIKEISHA BLACKMAN,
BY HER MOTHER AND FRIEND, *ET AL*.,
APPELLEES

v.

DISTRICT OF COLUMBIA,
A MUNICIPAL CORPORATION, *ET AL*.,
APPELLANTS

———

No. 04-7144

DORA CHAVEZ, IN HER OWN RIGHT
AND AS PARENT AND NEXT FRIEND OF ERIK CHAVEZ,
APPELLEE

v.

DISTRICT OF COLUMBIA *ET AL*.
APPELLANTS

———

No. 04-7145

CHAWNTAVIA WATKINS, A MINOR,
BY HER LEGAL CUSTODIANS AND NEXT FRIENDS
ETHEL AND JOSEPH HARDEN, *ET AL*.,

2

APPELLEES

v.

CLIFFORD B. JANEY, IN HIS OFFICIAL CAPACITY
CEO/SUPERINTENDENT, D.C. PUBLIC SCHOOLS;
DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION,
APPELLANTS

———

No. 04-7147

DE'MITRIA RICE, A MINOR,
BY HER MOTHER ALICIA RICE, NEXT FRIEND, ETC. ,
APPELLEES

v.

CLIFFORD B. JANEY, IN HIS OFFICIAL CAPACITY,
CEO/SUPERINTENDENT, DISTRICT OF COLUMBIA,
PUBLIC SCHOOLS; DISTRICT OF COLUMBIA,
APPELLANTS

———

Appeals from the United States District Court
for the District of Columbia
(No. 00cv00330)
(No. 97cv01629)
(No. 98cv03036)
(No. 98cv03081)

———

*Mary L. Wilson*, Assistant Attorney General, District of
Columbia, argued the cause for the appellants. *Robert J.
Spagnoletti*, Attorney General and *Edward E. Schwab*, Deputy

Attorney General, District of Columbia, were on brief.

*Donna L. Wulkan* and *Daniel C. Lewis* argued the cause for the appellees. *Alan I. Horowitz*, *Steven R. Dixon*, *Elizabeth T. Jester* and *Tilman L. Gerald* were on brief.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Riders to appropriations acts the Congress enacts for the District of Columbia (District) limit the amount of attorney's fees a party may collect from the District after prevailing in a suit "under the Individuals with Disabilities Education Act" (IDEA), 20 U.S.C. §§ 1400 *et seq*. The appellees[1] brought suit against the District

---

[1] We review three district court orders: *Blackman v. District of Columbia*, 328 F. Supp. 2d 36 (D.D.C. 2004), *Chavez v. District of Columbia*, 328 F. Supp. 2d 21 (D.D.C. 2004), and *Watkins v. Vance*, 328 F. Supp. 2d 27 (D.D.C. 2004), in which order the district court granted the attorney's fees petitions in both *Watkins v. Vance*, No. 98-cv-3081 and *Rice v. Vance*, No. 00-cv-0330. Notices of appeal were filed in all four cases. Between the district court orders and the notices of appeal, Clifford Janey replaced Paul Vance as CEO/Superintendent of the District of Columbia Public Schools and as defendant in *Watkins v. Vance* (now *Watkins v. Janey*) and *Rice v. Vance* (now *Rice v. Janey*). We sua sponte consolidated for briefing and argument these appeals: *Blackman v. District of Columbia*, No. 04-7139, *Chavez v. District of Columbia*, No. 04-7144, *Watkins v. Janey*, No. 04-7145, and *Rice v. Janey*, No. 04-7147. A reference to "appellees" includes all of the appellees in this consolidated appeal. A reference to "*Blackman* appellees" or "*Chavez* appellees" includes only the individual appellees in the designated order. A reference to "*Watkins* appellees" includes the individual appellees in the *Watkins*

under 42 U.S.C. § 1983 to enforce the IDEA's guarantee of a free appropriate public education. In three separate orders, the district court awarded them attorney's fees above the limits the rider imposed. The District appeals all three orders. Because the district court did not properly certify as final two of the orders, we lack jurisdiction over those two. Regarding the third order, we agree with the District's argument that an action brought pursuant to 42 U.S.C. § 1983 to enforce IDEA rights is a suit "under" the IDEA and thus subject to the rider. Accordingly, we reverse the district court as to that order and remand.

I.

In response to "the growth in legal expenses and litigation associated with special education in the District of Columbia and the usurping of resources from education to pay attorney fees," H.R. Rep. No. 105-670, at 50 (1998), the Congress attached a rider, section 130, to the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, limiting the amount of fees the District could pay to prevailing parties in IDEA cases, *see* Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 130, 112 Stat. 2681 (1998) (section 130). Specifically, section 130 prohibited any funds appropriated in the 1999 Appropriations Act from being used by the District to pay fees to any attorney prevailing against the DCPS in an action "under the [IDEA]" above the amount specified therein.[2] *Id.* The

---

order and the *Rice* order. A reference to the "District" as defendant includes superintendent Janey as defendant as well. *See infra* p. 4.

[2]In its entirety, section 130 provides:

None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party who prevails in an action, including an administrative

Congress attached virtually identical riders to subsequent appropriations acts for 2000, 2001, 2003, 2004, 2005 and 2006.[3] *See* Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act, 2006, Pub. L. No. 109-115, § 122, 119 Stat. 2396, 2519 (2005); District of Columbia Appropriations Act, 2005, Pub. L. No. 108-335, § 327, 118 Stat. 1322, 1344 (2004); Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, § 432, 118 Stat. 3, 141 (2004); Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, § 144, 117 Stat. 11, 131–32 (2003); District of Columbia Appropriations Act, 2001, Pub. L. No. 106-522, § 122, 114 Stat. 2440, 2464 (2000); Consolidated Appropriations Resolution, 2000, Pub. L. No. 106-113, § 129, 113 Stat. 1501, 1517 (1999).[4]

---

proceeding, brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. [§§] 1400 *et seq.*) if--

(1) the hourly rate of compensation of the attorney exceeds [$50]; or

(2) the maximum amount of compensation of the attorney exceeds [$1,300], except that compensation and reimbursement in excess of such maximum may be approved for extended or complex representation in accordance with section 11-2604(c), District of Columbia Code.

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999 § 130.

[3]The rider to the 2002 Appropriations Act, Section 140(a) of the District of Columbia Appropriations Act of 2002, Pub. L. No. 107-96, 115 Stat. 923 (2001), is discussed *infra* p. 5–6.

[4]Hereafter, a reference to "section 130" includes the analogous provisions in the 2000, 2001, 2003, 2004 and 2005 appropriations

In *Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000), we first interpreted the section 130 language.[5]  In that case, the District argued that section 130 prohibited the court from awarding fees above the cap.  *Id.* at 9.  We rejected the argument, finding that the rider only prohibited the District from *paying* attorney's fees greater than the prescribed amount but had no effect on the district court's *authority* to award higher fees.  Under our *Calloway* holding, if the Congress should someday lift the fees cap provision, a prevailing party could then seek the unpaid fees above the cap *nunc pro tunc*.  *Id.* at 9–11. Following *Calloway*, the Congress changed the statutory language in the 2002 District of Columbia Appropriations Act, section 140(a) of which provides:

> Notwithstanding 20 U.S.C. 1415, 42 U.S.C. 1988, 29 U.S.C. 794a, or any other law, none of the funds appropriated under this Act, or in appropriations Acts for subsequent fiscal years, may be made available to pay attorneys' fees accrued prior to the effective date of this Act that exceeds [sic] a cap imposed on attorneys' fees by prior appropriations Acts that were in effect during the fiscal year when the work was performed, or when payment was requested for work previously performed, in an action or proceeding brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. [§§] 1400 *et seq.*).

District of Columbia Appropriations Act, 2002, Pub. L. No. 107-96, § 140(a), 115 Stat. 923, 958 (2001) (Section 140(a)).

---

acts.

[5]We also considered the fees cap provisions in *Petties v. District of Columbia*, 227 F.3d 469 (D.C. Cir. 2000), and *Kaseman v. District of Columbia*, 444 F.3d 637 (D.C. Cir. 2006).

The appellees instituted four separate section 1983 actions against the District, *Blackman v. District of Columbia*, No. 97-cv-1629, *Chavez v. District of Columbia*, No. 98-cv-3036, *Watkins v. Vance*, No. 98-cv-3081, and *Rice v. Vance*, No. 00-cv-0330, which the district court consolidated with other pending section 1983 class actions.[6] The district court

---

[6]Because the appellees were either "prevailing parties" at the administrative level or had reached private agreements with the DCPS, they had no IDEA cause of action. *See* 20 U.S.C. § 1415(i)(2) (limiting IDEA cause of action to "[a]ny party aggrieved . . . ."). They therefore instituted actions against the District under section 1983 alleging a "deprivation of . . . rights . . . secured by the . . . laws," 42 U.S.C. § 1983—to wit, the IDEA's guarantee of the right to a free appropriate public education (FAPE). We have not yet decided whether a section 1983 action can be brought to enforce the FAPE right. In *Smith v. Robinson*, 468 U.S. 992 (1984), the plaintiffs pursued a section 1983 claim, alleging that the school district had discriminated against their child based on his handicapped condition in violation of the equal protection clause. Their equal protection claim was brought pursuant to section 1983 and was "virtually identical to" one cognizable under the IDEA's predecessor, the Education of the Handicapped Act (EHA). *Id.* at 1009. The United States Supreme Court held that the EHA's comprehensive remedies demonstrated the Congress's intent that a FAPE claim be pursued solely through the EHA. Accordingly, the plaintiffs could not maintain a section 1983 action and the Court reversed the grant of attorney's fees under 42 U.S.C. § 1988. It expressly declined, however, to address "a situation where the EHA is not available." 468 U.S. at 1021. In *Robinson v. Pinderhughes*, 810 F.2d 1270, 1271 (4th Cir. 1987), the Fourth Circuit subsequently held that certain parties *could* maintain a section 1983 action to enforce an EHA claim. There, the plaintiffs, like the appellees here, prevailed at the administrative level but faced a school district that refused to implement the administrative decision. The court held that the EHA lacked an enforcement mechanism to secure the right the plaintiffs had won at the administrative level and thus the plaintiffs could enforce that right

consolidated two of the actions, which were class actions, *Blackman v. District of Columbia*, No. 97-cv-1629, and *Jones v. District of Columbia*, No. 97-cv-2402, to form one class with two subclasses, only one of which, the *Jones* subclass, is applicable here:

> [A]ll children, now and in the future, who are entitled to have DCPS provide them with a free appropriate public education [FAPE] and who have been denied same because DCPS either (a) has failed to fully and timely implement the determinations of hearing officers, or (b) failed to fully and timely implement agreements concerning a child's identification, evaluation, educational placement, or provision of FAPE that DCPS has negotiated with the child's parent or educational advocate.

*Blackman v. District of Columbia*, 328 F. Supp. 2d 36, 39 (D.D.C. 2004) (second alteration in original). The court consolidated *Chavez* with *Blackman* and *Jones* on March 19, 1999, *see Chavez v. District of Columbia*, No. 98-cv-3036 (D.D.C. March 19, 1999); *Watkins* on February 17, 1999, *see Watkins v. Vance*, No. 98-cv-3081 (D.D.C. Feb. 17, 1999); and *Rice* on February 29, 2000, *see Rice v. Vance*, No. 00-cv-330 (Feb. 29, 2000).[7] All appellees are members of the *Jones* subclass.

On June 3, 1998, the district court granted partial summary

---

via section 1983. Because none of the parties addresses the issue here, we save it for another day and assume, without deciding, that the appellees' section 1983 actions are cognizable.

[7]The *Blackman* appellees are parties to *Blackman v. District of Columbia* but after *Blackman*'s consolidation with *Jones* and the class certification, they became members of the *Jones* subclass. *See Blackman*, 328 F. Supp. 2d at 37.

judgment to the appellees on the liability issue. The court nonetheless declined to grant class-wide preliminary injunctive relief, believing that where "irreparable injury was threatened absent some action by the District, the District would not ignore its obligation to take such action [to remedy violations] even absent resolution of the claims of the class as a whole." *Blackman v. District of Columbia*, 185 F.R.D. 4, 5 (D.D.C. 1999) (internal quotation marks omitted). By 2000, however, the district court was dissatisfied with the District's lack of response and therefore appointed a special master to assist it in handling individual preliminary injunction motions.

The appellees then moved for attorney's fees under section 1988(b). Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee" in a section 1983 action. 42 U.S.C. § 1988(b). Before moving for attorney's fees, the *Chavez* and *Watkins* appellees had sought and obtained preliminary injunctive relief. The district court awarded fees to the *Chavez* and *Watkins* appellees based on the relief they obtained. *See Chavez v. District of Columbia*, No. 98-cv-3036 (D.D.C. March 31, 2000). The *Blackman* appellees, by contrast, did not obtain preliminary injunctive relief but instead had earlier reached private agreements with the DCPS, which the DCPS then failed to honor. After the district court appointed the special master, the *Blackman* appellees sought a preliminary injunction to require the DCPS to comply with the respective agreements. Before the special master acted, the *Blackman* appellees reached new agreements with the DCPS, whereby the latter agreed to implement the original agreements. The special master therefore recommended to the court that their motions for preliminary injunctions be denied and the district court agreed. *See Blackman*, 328 F. Supp. 2d at 40. The *Blackman* appellees then sought attorney's fees under 42 U.S.C. § 1988(b). The District argued that the *Blackman* appellees were not "prevailing parties" within the meaning of section 1988(b) because they had

neither obtained a favorable ruling at the administrative level nor obtained injunctive relief from the district court, citing the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).  The district court disagreed, concluding that the *Blackman* appellees "sought and achieved a remedy for defendants' ongoing violations of the IDEA.  Such an effort to secure a remedy through Court-established procedures is—and must be—inextricably intertwined with the Court's conclusion that the violation existed in the first instance." *Blackman*, 328 F. Supp. 2d at 44–45.

The District argued in all four actions (*Chavez, Watkins, Rice* and *Blackman*) that section 130 (or section 140(a)) capped the attorney's fees the District could pay them but the district court rejected its argument.  With regard to section 130, the court held that the language "under the [IDEA]" did not apply to the appellees' suits which were brought under section 1983, not the IDEA.  The district court similarly interpreted section 140(a), finding that "[b]y its plain meaning, the restrictions of Section 140(a) (2002) apply only to cases brought under the IDEA itself.  To interpret this provision to preclude awards in connection with substantive Section 1983 claims would render the language in the final portion of the sentence incomplete because there is no reference to actions brought under Section 1983." *Watkins*, 328 F. Supp. 2d at 35; *see Blackman*, 328 F. Supp. 2d at 43 n.3; *Chavez*, 328 F. Supp. 2d at 22.  The court also rejected the District's argument that the court's interpretation would render section 140(a)'s opening proviso—"Notwithstanding 20 U.S.C. 1415, *42 U.S.C. 1988*, 29 U.S.C. 794a, or any other law" (emphasis added)—superfluous. *See Blackman*, 328 F. Supp. 2d at 43 n.3; *Chavez*, 328 F. Supp. 2d at 23; *Watkins*, 328 F. Supp.2d at 34–36.  The court gave two reasons for its construction.  First, "the provision still prevents parties from using other statutes, including Section 1988, to collect the IDEA attorneys' fees awarded for counsel's pre-

Section 140 (2002) efforts by courts under *Calloway* but that remain unpaid because of the statutory cap." *Watkins*, 328 F. Supp. 2d at 35. And second, it "prevents plaintiffs from filing a separate Section 1983 action seeking payment for such past attorneys' fees awarded under the IDEA in the event the statutory cap is ever dissolved." *Id.*

The District appeals all three orders, arguing that section 130 and section 140(a) limit the amount of attorney's fees the appellees can recover because a section 1983 action to enforce the FAPE right provided by the IDEA amounts to an action "under the [IDEA]." It appeals the *Blackman* order on the additional ground that the *Blackman* appellees are not "prevailing parties."

## II.

In this consolidated appeal, the District raises three "merits" issues: (1) whether section 130 limits the attorney's fees the District may pay to all appellees;[8] (2) whether section 140(a) limits the attorney's fees the District may pay to all of the appellees; and (3) whether the *Blackman* appellees are "prevailing part[ies]" within the meaning of 42 U.S.C. § 1988(b). Our review of these issues of statutory construction is de novo. *See, e.g.*, *Calloway*, 216 F.3d at 5 (citing *United States v. Williams-Davis*, 90 F.3d 490, 512 (D.C. Cir. 1996)).

## A.

Although neither side contests our jurisdiction, "it is well established that a court of appeals must first satisfy itself of its own jurisdiction, *sua sponte* if necessary, before proceeding to the merits." *Citizens for Abatement of Aircraft Noise, Inc. v.*

---

[8]To repeat, all appellees include the *Blackman* appellees, the *Watkins* appellees (including the *Rice* appellees) and the *Chavez* appellees. *See supra* note 1.

*Metro. Wash. Airports Auth.*, 917 F.2d 48, 53 (D.C. Cir. 1990), *aff'd*, 501 U.S. 252 (1991). Our jurisdiction, if it exists, arises under 28 U.S.C. § 1291, which "generally extends only to *final* district court orders," *Outlaw v. Airtech Air Conditioning & Heating, Inc.*, 412 F.3d 156, 159 (D.C. Cir. 2005) (citing *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 682 (D.C. Cir. 2003)) (emphasis added); that is, orders that dispose of an entire case both as to parties and issues. *See Haynesworth v. Miller*, 820 F.2d 1245, 1253 (D.C. Cir. 1987). Nevertheless, if the case involves "more than one claim for relief" or "multiple parties," the district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties"; the court may do so, however, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b).

All three orders—*Chavez*, *Watkins*, and *Blackman*—are nonfinal because they do not dispose of all of the claims of all of the parties in the consolidated class action.[9] Our jurisdiction,

---

[9]*Chavez* involved only one plaintiff—Dora Chavez, in her own right and as parent and next friend of Erik Chavez. *See Chavez*, No. 98-cv-3036 docket report. *Rice* involved two plaintiffs—De'Mitria Rice by her parent and next friend Alicia Rice and Alicia Rice in her own right. *Rice*, No. 00-cv-330 docket report. The *Watkins* order resolved the only remaining issues in that action. *See Watkins*, 328 F. Supp. 2d at 30 n.1. The orders in these cases thus could be considered final orders if they had retained their separate identities after their consolidation with *Blackman* and *Jones*. To determine whether consolidated cases retain their separate identity or become one case for the purpose of appellate jurisdiction, we "focus on the reasons for the consolidation." *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 216 (D.C. Cir. 2003). That is, "when a district court consolidates cases and treats them as such 'for all purposes,' an order deciding fewer than all the claims of all the parties cannot be appealed without a Rule 54(b) certification." *Id.* (quoting *Phillips v. Heine*, 984 F.2d 489, 490 (D.C. Cir. 1993) (internal

accordingly, turns on whether the district court properly certified these orders for appeal under Federal Rule of Civil Procedure 54(b). We review each order to assure that the district court made (1) "an *express* determination that there is no just reason for delay" and (2) "an *express* direction for the entry of judgment." *Id.* (emphasis added). The *Blackman* order states only "MINUTE ORDER granting defendants' renewed motion for expedited certification of order under Federal Rule 54(b)." *Blackman*, No. 97-cv-1692, slip op. at 1 (D.D.C. Jan. 25, 2005). The *Watkins* order provides that "this Order constitutes a final appealable Order." *Watkins*, 328 F. Supp. 2d at 35. We believe that both the *Blackman* and *Watkins* orders are facially deficient.

In *Building Industry Association of Superior California v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998), we held that the "express direction and determination is a bright-line requirement" that prohibits us from "imply[ing] a Rule 54(b) determination." The mandate of Rule 54(b) is plain and without exception. *Cf. Everett v. U.S. Airways Group, Inc.*, 132 F.3d 770, 773 (D.C. Cir. 1998) ("[A]bsent an express direction for entry of judgment, an order that disposes of less than all the claims—no matter with what firmness and apparent finality—is not appealable . . . ." (internal quotations omitted)). While the *Blackman* and *Watkins* orders can be construed to contain an "express direction," *see Blackman*, No. 97-cv-1692, at 1 (D.D.C.

---

quotation marks omitted)). After consolidating the actions here, the district court "treat[ed] them as such for all purposes," *id.* (internal quotations marks omitted), including through the remedy phase, *see Blackman v. District of Columbia*, 2006 WL 679906 (D.D.C. March 17, 2006). Accordingly, they "cannot be appealed without a Rule 54(b) certification." *Columbia/HCA Healthcare Corp.*, 318 F.3d at 216. The *Blackman* order is nonfinal for a different reason—it resolved the claims of only three—Diane Blackwell, Dionne Timmons and Victoria Harris—of more than 150 plaintiffs and therefore did not dispose of all claims for all parties.

Jan. 25, 2005) ("ORDER granting defendants' renewed motion . . . under Federal Rule 54(b)); *Watkins*, 328 F. Supp. 2d at 36 ("[T]his Order constitutes a final appealable Order."), neither contains an "express determination that there is no just reason for delay" and under our precedent we cannot imply one. *See Bldg. Indus. Ass'n of Super. Cal.*, 161 F.3d at 743–44; *see also Granack v. Continental Cas. Co.*, 977 F.2d 1143, 1144-45 (7th Cir. 1992) (order described as "Final Appealable Judgment Pursuant to Federal Rule of Civil Procedure 54(b)" insufficient); *Auriemma v. City of Chicago*, 906 F.2d 312, 313 (7th Cir. 1990) (order purporting to be "final and appealable" insufficient).

Despite the clarity of Rule 54(b) and our precedent, at oral argument the parties argued that so long as it is apparent or discernible from the record that "there is no just reason for delay," the *Building Industry* holding does not require that the order contain an "express determination." Not so. We held in *Building Industry* that the district court need not express its *reasoning* behind an "express declaration" so long as the reasoning is apparent or discernible from the record. *Bldg. Indus. Ass'n of Superior Cal.*, 161 F.3d at 744 ("Where the district court's reasoning is apparent to us, or discernible from other parts of the record, we would perhaps find *literal* compliance with the Rule quite sufficient." (emphasis added)). On the other hand, even if the record indicates no just reason for delay, an order is not final under Rule 54(b) unless it contains the "express determination" thereof. *See Granack*, 977 F.2d at 1145 ("A court's intention to enter an express determination [ ] is irrelevant absent an express determination." (internal quotation omitted)). Neither the *Blackman* order nor the *Watkins* order meets Rule 54(b)'s "bright-line requirement" and we are therefore without jurisdiction to review them.

In contrast, the *Chavez* order provides in part: "Order finally deciding the attorney's fees claims by these plaintiffs; and there being *no just reason for delaying* an appeal, it is . . .

15

ORDERED, that the Order constitutes a final, appealable judgment under Fed. R. Civ. P. 54(b)." *Chavez v. District of Columbia*, No. 98-cv-3036 (D.D.C. Dec. 2, 2004) (emphasis added). It therefore contains the requisite "express direction" and "express determination." Moreover, we can discern the court's rationale for its "express determination" from the record. *See* Mem. in Supp. of Defs.' Mot. for Expedited Certification of Order under Federal Rule 54(b); *see also Chavez*, 328 F. Supp. 2d. 21. Accordingly, we have jurisdiction over the *Chavez* appeal.

B.

The sole merits issue before us, then, is whether section 140(a) limits the amount of attorney's fees the District can pay to the *Chavez* appellees.[10] This issue is one of statutory construction and, as noted, our review is de novo. We start with the plain meaning of the text, looking to the " 'language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). If the language has a " 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.' " *Id.* (quoting *United States v. Wilson,* 290 F.3d 347, 352 (D.C. Cir. 2002) (quoting *Robinson,* 519 U.S. at 340 (internal quotations omitted))). We agree with the District that the plain meaning of the phrase "an action or proceeding . . . under the [IDEA]," in the context of section 140(a) as a whole, includes not only an action alleging the IDEA as its statutory basis but also a section 1983 action brought to enforce the FAPE

---

[10]Section 140(a) applies not only to funds appropriated in the 2002 Appropriations Act but also to "appropriations Acts for subsequent fiscal years." For this reason, we need not reach the District's section 130 argument.

right granted by the IDEA.

As the Supreme Court has noted, the word "under" has many dictionary definitions and we draw its meaning from the context of the statute before us. *Ardestani v. INS*, 502 U.S. 129, 135 (1991). Both the High Court and this court have interpreted a provision analogous to the one before us. In *Ardestani*, the Court interpreted the attorney's fees provision of the Equal Access to Justice Act (EAJA). The EAJA requires a court to award fees to a party prevailing in "an adjudication *under* section 554" of the APA. *See* 5 U.S.C. § 504(a)(1), (b)(1)(C)(i). The Court decided that "the most natural reading of the EAJA's applicability to adjudications 'under section 554' is that those proceedings must be 'subject to' or 'governed by' § 554." *Ardestani*, 502 U.S. at 135. The Court also approvingly cited this court's decision interpreting the same phrase. *Id.* Our decision in *St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446 (D.C. Cir. 1989), held that the term "under," as used in the EAJA's attorney's fees provision, "means 'subject [or pursuant] to' or 'by reason of the authority of.' " *Id.* at 450 (alteration in original); *see also D.C. Hosp. Ass'n. v. District of Columbia*, 224 F.3d 776, 779 (D.C. Cir. 2000) (" 'Under' is defined as 'required by[,] in accordance with[, or] bound by.' " (quoting *Webster's Third New International Dictionary* 2487 (1981) (alteration in original)).

The appellees maintain that the district court correctly determined that section 140(a)'s applicability to actions "under the [IDEA]" means that attorney's fees are subject to the cap *only if* the IDEA is the explicit statutory basis of the plaintiff's cause of action. Appellees' Br. 32–33 ("Even with the addition of the 'notwithstanding' clause to Section 140, Section 140 does not cap the plaintiffs' attorneys' fees any more than Section 130 caps those fees: both sections cap attorneys' fees only in actions 'brought under' the IDEA. Section 140(a) means that when claims are 'brought under' the IDEA, the District is not

authorized to pay attorneys' fees above the fee caps, 'notwithstanding' other statutes that authorize awards and payments of attorneys' fees."). We agree that such an action is plainly brought "under the [IDEA]." But we do not agree that the plain meaning of "under" precludes the applicability of section 140(a) to an action using section 1983 to enforce the IDEA's FAPE right. Section 1983 is not the source of substantive rights but rather "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). The *Chavez* appellees' section 1983 action sought to vindicate rights conferred by the IDEA. Their action is "governed by" and "subject to" the IDEA because, in the absence of the IDEA, the appellees would have no federal right to vindicate. At the very least, as we articulated in *St. Louis Fuel & Supply Co.*, their action was brought "pursuant to" or "by reason of the authority of" the IDEA. 890 F.2d at 450.

Moreover, any ambiguity in the phrase "under the [IDEA]" is resolved by the opening proviso of section 140(a). Section 140(a) begins, "Notwithstanding 20 U.S.C. 1415 [the IDEA attorney's fees provision], *42 U.S.C. 1988* [*the section 1983 attorney's fees provision*], 29 U.S.C. 794a [the Rehabilitation Act attorney's fees provision], or any other law" (emphasis added). By expressly referencing the attorney's fees provisions not only of the IDEA but also of section 1983 and of the Rehabilitation Act, the Congress intended the cap to apply to attorney's fees incurred in enforcing the IDEA's guarantee—namely, the guarantee of a free appropriate public education—irrespective of the statutory basis alleged in the complaint. Were we to read the "under the [IDEA]" language as applying only to an action labeled an IDEA action, *see* 20 U.S.C. § 1415(i)(2), the proviso would be nullified contrary to the canon of construction that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn,* 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, *Statutes*

*and Statutory Construction* § 46.06, pp. 181–86 (rev. 6th ed. 2000) (alteration added)).

In an unconvincing attempt to save their interpretation of the statute—that the cap applies only to an IDEA action denominated as such—the *Chavez* appellees urge two alternative constructions of the beginning proviso. First, they contend that the proviso responds to our holding in *Calloway* that section 130 does not limit the amount of attorney's fees the court may award but only the District's authority to pay them in an amount above the cap. Appellees' Br. 31. But the proviso in no way affects the *Calloway* holding. Rather, the Congress dealt with that issue by making section 140(a)'s cap permanent. Section 140(a) prevents funds appropriated in the 2002 Appropriations Act "or in appropriations Acts for subsequent fiscal years" from being used to pay fees above the cap. If the proviso meant what the appellees claim, there would have been no need to make section 140(a)'s limitation applicable to "appropriations Acts for subsequent fiscal years."

The *Chavez* appellees also argue that the proviso was intended to prevent the District from paying unpaid fees if the Congress in the future were to eliminate the cap and those plaintiffs with unpaid fees capped in earlier years were to bring a section 1983 action to collect the unpaid amount. Appellees' Br. 32. This construction is also unavailing. The appellees' argument does not give meaning to the entire proviso. It utterly fails to address the language referring to the Rehabilitation Act's attorney's fees provision and to "any other law." The appellees do not argue—nor could they—that the Rehabilitation Act attorney's fees provision would allow them to collect attorney's fees if the Congress were to lift the cap. Rather, the cap applies to a section 1983 action, a Rehabilitation Act action or any other action to enforce the right to a free appropriate public education "under the [IDEA]."

For the foregoing reasons, we dismiss the appeals in

*Blackman v. District of Columbia*, No. 04-7139, *Watkins v. Janey*, No. 04-7145, and *Rice v. Janey*, No. 04-7147. The order of the district court in *Chavez v. District of Columbia*, 328 F. Supp. 2d 21, is vacated and remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*